IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:24-cr-00002-SEP-JMB |
| | ) |
| MICHAEL GRODNER, et al. | ) |
| | ) |
| Defendants. | ) |

## MOTION FOR PRETRIAL DETENTION AND HEARING

COMES NOW the United States of America, by and through Sayler A. Fleming, United States Attorney, and Justin M. Ladendorf, Assistant United States Attorney, for the Eastern District of Missouri, and hereby moves the Court to order Defendant Oladiran Ajayi-Obe a/k/a "TJ" ("Ajayi-Obe") detained pending trial, and requests that a detention hearing be held within three days of Ajayi-Obe's initial appearance, pursuant to 18 U.S.C. § 3142(f)(2).

## INTRODUCTION

1.      Ajayi-Obe is a serious flight risk. He organized a nationwide bank-fraud conspiracy that revolved around using counterfeit ID cards to assume other people's identities. As part of the conspiracy, he used aliases to travel on flights across the country and to rent cars in dozens of states. He also supplied his co-conspirators with counterfeit passport cards that they used to make fraudulent withdrawals from victims' bank accounts. Beyond the conspiracy, he has used other people's identities as part of his daily routine for years. Since 2022, he has rented (at least) three apartments in Massachusetts and New York under aliases. His ability to hide in plain sight by living as someone else makes him a quintessential example of a serious flight risk. As such, the only way to reasonably assure his future appearance is to detain him pending trial.

## LEGAL STANDARD

2.      The Bail Reform Act, Title 18, United States Code, Section 3142, sets forth a "two step inquiry" to decide whether a defendant should be detained pending trial. *See United States v. Shakur*, 817 F.2d 189, 194 (2d Cir. 1987).

3.      First, the Court must be satisfied that the case falls under one of the categories in Section 3142(f). *See United States v. Cook*, Case 87 F.4th 920, 924 (8th Cir. 2023) ("[T]he government has the burden to show that the case 'involves' one of the circumstances defined in §3142(f)(1) or (2)."). Relevant here, Section 3142(f)(2) requires a detention hearing "upon motion of the attorney for the Government or upon the judicial officer's own motion in a case that involves . . . a serious risk that such person will flee[.]" 18 U.S.C. § 3142(f)(2)(A).

4.      Second, after the Government demonstrates that it is entitled to a detention hearing, the Court must hold a hearing and detain the defendant if, after the hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making this determination, the Court considers the factors set forth in subsection (g), including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g). "[E]ither danger to the community or risk of flight is sufficient to authorize detention." *United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991) (quoting *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986)).

5. As the Eighth Circuit recently explained, in making these two determinations under subsections (f)(2) and (e)(1), the Court need not conduct a "rigid two-step inquiry" before ordering detention. *Cook*, 87 F.4th at 924. Rather, the Court may "permissibly conduct[] the two inquiries in a single detention hearing" because "the two inquires, while not identical, substantially overlap." *Id.* In other words, "the § 3142(g) factors, which govern the § 3142(e)(1) inquiry, are relevant" to the initial § 3142(f)(2) inquiry of whether the case involves a serious risk of flight. *Id.*

## ARGUMENT

6. The serious flight risk presented by Ajayi-Obe is demonstrated by the nature and circumstances of the charges against him. As detailed in the Superseding Indictment, Ajayi-Obe played a pivotal role in orchestrating a nationwide bank-fraud scheme that was built on the use of aliases and counterfeit identification documents. To carry out the scheme, Ajayi-Obe traveled under aliases (including "Musa Nyakako," "William Asukwo," and "Fritz Oslyn") on more than 40 separate flights that he and his co-conspirators took to and from states where victims' banks were located. He also used counterfeit ID cards to rent cars under aliases (including "Mohamed Ifthikar") so that he and his co-conspirators could drive to the banks. And he provided counterfeit United States passport cards to his co-conspirators, which they used to impersonate victims and fraudulently withdraw hundreds of thousands of dollars from the victims' bank accounts.

7. Ajayi-Obe's history and characteristics underscore the serious risk of flight that he poses. Ajayi-Obe has no ties whatsoever to this District. Indeed, to the Government's knowledge, his only connection to this District is that he traveled here under an alias in March 2023, when he and three of his co-defendants attempted to carry out their bank-fraud scheme. Ajayi-Obe also lacks any meaningful ties to New York where he resides. To this point, the Government's

3

investigation has revealed that, for at least the last two years, he has lived at apartments in Massachusetts and New York that he rented under aliases, and, in each instance, he absconded after the landlords initiated eviction proceedings due to substantial unpaid rent balances.

8.      In addition, Ajayi-Obe's criminal history, though limited, reinforces that he is a serious flight risk. On December 4, 2022, Ajayi-Obe was arrested in New York for identity theft and false personation after he presented police with a Massachusetts driver's license bearing the name "William Asukwo," which was one of the various aliases that he used to fly during the conspiracy. When police searched the vehicle that Ajayi-Obe was driving, they discovered counterfeit identification documents that reflected another person's name but displayed his picture, including a Connecticut driver's license bearing the name "Mohamed Ifthikar" (one of the various aliases that Ajayi-Obe used to rent cars during the conspiracy), a Massachusetts driver's license bearing the name "Musa Nyakako" (another alias that Ajayi-Obe used to fly during the conspiracy and to rent an apartment in Massachusetts), and a Massachusetts driver's license bearing the name "Sam Anyamah" (an alias that Ajayi-Obe used to rent an apartment in New York). According to the police report, Ajayi-Obe stated during questioning that "he has all of the identifications because people ask him to provide them with false identities" and "the software he uses . . . provided two IDs" so he "uses the information provided to him to creat[e] a fake ID for himself as well." Following Ajayi-Obe's arrest for this incident, he was given a court date of December 14, 2022 but failed to appear, which resulted in the issuance of an arrest warrant that remains outstanding.

9.      Besides having the means and propensity to flee, Ajayi-Obe also has the incentive to flee considering the mountain of evidence against him and the significant prison time that he faces if convicted. Although Ajayi-Obe attempted to avoid detection through aliases, the

4

Government's case against him is incredibly strong. The Government has obtained airline records, which reflect that Ajayi-Obe's known aliases, phone numbers, and email addresses are tied to flights that he and his co-conspirators took to and from states across the country in furtherance of their bank-fraud scheme. The Government has also obtained video footage from Enterprise Rent-a-Car that captured Ajayi-Obe renting a car in St. Louis under the alias "Mohamed Ifthikar" after he flew here under the alias "Fritz Oslyn." The Government has further obtained photographs from the landlord for an apartment that Ajayi-Obe rented in Massachusetts under the alias "Musa Nyakako." One such photograph showed Ajayi-Obe's Massachusetts driver's license surrounded by numerous counterfeit passport cards bearing pictures of his co-conspirators (including co-defendant Clemente Castracucco and co-defendant Timothy Derrico). To be sure, this is only a small sampling of the evidence against Ajayi-Obe. But it is more than enough to drive home the point that he is facing serious charges supported by an abundance of evidence, which could result in him spending decades in prison if he is convicted. *See* 18 U.S.C. §§ 1344, 1349 (maximum 30-year sentence); 18 U.S.C. § 1543 (maximum 10-year sentence); 18 U.S.C. § 1028A (mandatory 2-year consecutive sentence).

10.     In sum, whether Ajayi-Obe should be detained pending trial is not a close call. The serious risk that he will flee cannot be overstated: he has seemingly unlimited access to counterfeit identification documents, he is unquestionably skilled at using them to conceal his identity, and he has nothing to lose given the overwhelming evidence against him. Under these circumstances, there is no condition or combination of conditions that will reasonably assure Ajayi-Obe's future appearance. Only pretrial detention will do that.

WHEREFORE, the Government requests that the Court hold a detention hearing within three days of Ajayi-Obe's initial appearance and, following such hearing, order that Ajayi-Obe be detained pending trial.

                    Respectfully submitted,

                    SAYLER A. FLEMING
                    UNITED STATES ATTORNEY

                    */s/ Justin M. Ladendorf*
                    JUSTIN M. LADENDORF, #68558MO
                    ASSISTANT UNITED STATES ATTORNEY
                    Thomas F. Eagleton Courthouse
                    111 South Tenth Street, 20th Floor
                    St. Louis, Missouri 63102
                    (314) 539-2200